```
 1
 2
 3
 4
 5
 6                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF WASHINGTON
 7
 8  CONFEDERATED TRIBES AND BANDS OF
    THE YAKAMA NATION, a federally-         NO. CV-10-3050-EFS
 9  recognized Indian tribal
    government and as parens patriae
10  on behalf of the Enrolled Members       ORDER GRANTING PLAINTIFFS'
    of the Confederated Tribes and          MOTIONS FOR PRELIMINARY
11  Bands of the Yakama Nation;             INJUNCTION HEARING and
    FRIENDS OF THE COLUMBIA GORGE, an       MOTION FOR EXPEDITED
12  Oregon non-profit corporation;          HEARING, DENYING MOTION TO
    NORTHWEST ENVIRONMENTAL DEFENSE         STRIKE DECLARATION, and
13  CENTER, an Oregon non-profit            REQUIRING SETTING OF
    corporation; COLUMBIA RIVERKEEPER,      SCHEDULING CONFERENCE
14  a Washington non-profit
    corporation; DAWN STOVER, a
15  Washington resident; and DANIEL
    LICHTENWALD, a Washington
16  resident,

17                      Plaintiffs,

18             v.

19  UNITED STATES DEPARTMENT OF
    AGRICULTURE, UNITED STATES
20  DEPARTMENT OF AGRICULTURE ANIMAL
    AND PLANT HEALTH INSPECTION
21  SERVICE; TOM VILSACK, Secretary of
    the United States Department of
22  Agriculture; and CINDY SMITH,
    Administrator of the United States
23  Department of Agriculture Animal
    and Plant Health Inspection
24  Service,

25                      Defendants.

26
```

ORDER ~ 1

A telephonic hearing occurred in the above-captioned matter on August 30, 2010, on Plaintiffs Confederated Tribes and Bands of the Yakama Nation's ("Yakama Nation") Motion for Preliminary Injunction (Ct. Rec. 66) and Friends of Columbia Gorge, Northwest Environmental Defense Center, Columbia Riverkeeper, Dawn Stover, and Daniel Lichtenwald's Motion for Preliminary Injunction (Ct. Rec. 24).  After obtaining a temporary restraining order (Ct. Rec. 37), Plaintiffs seek a preliminary injunction barring the United States Department of Agriculture ("USDA") from authorizing shipments of Hawaiian municipal waste (hereinafter "garbage") into the mainland.  Plaintiffs were represented by Michael Chappell, Tom Buchele, Anthony Broadman, Gabriel Galanda, and Julio Carranza.

Defendants USDA, USDA Animal and Plant Health Inspection Service (APHIS), USDA Secretary Tom Vilsack, and APHIS Administrator Cindy Smith oppose the motions.  They were represented by Ty Bair and Pam DeRusha.

After reviewing the submitted material and relevant authority and hearing from counsel,[1] the Court is informed.  As explained below, the motions are granted and a preliminary injunction is entered.

---

[1] Also before the Court were the Motion to Strike Supplemental Declaration of Rebecca Bech (Ct. Rec. 69) and Motion to Expedite Hearing thereon (Ct. Rec. 72) filed by the environmental organization and individual Plaintiffs.  The Court found good cause to grant an expedited hearing.  After hearing from counsel, the Court denied the motion to strike APHIS Deputy Administrator for Plant Protection and Quarantine (PPQ) Bech's untimely declaration.

ORDER ~ 2

**A.   Background**

Prior to 2006, federal regulations barred the shipment of Hawaiian garbage for dumping in the continental United States (hereinafter "the mainland"). Then, in 2006, APHIS proposed amending the regulations to allow for shipment of certain garbage to the mainland, 71 Fed. Reg. 20,030 (April 19, 2006), and ultimately determined such was appropriate in accordance with 7 C.F.R. §§ 330.402-403. APHIS began assessing the environmental and pest risks associated with hauling garbage, which would be baled and then wrapped in plastic, from Hawaii to the Roosevelt Regional Landfill (hereinafter "Roosevelt Landfill") located near the Columbia River[2] and the Yakama Nation[3] reservation in Washington. In pertinent part, APHIS prepared an environmental assessment (EA), which concluded that Hawaiian Waste Systems' (HWS) proposed shipment of Hawaiian garbage to the Roosevelt Landfill would have no significant environment impacts. Thereafter, APHIS issued a Finding of No Significant Impact (FONSI). Each of the Plaintiffs submitted comments in response to the FONSI; however, it is unclear whether APHIS considered the Yakama Nation's comments.

---

[2] The environmental organizations' members and individual Plaintiffs enjoy hiking and observing the wildlife on the land near the Roosevelt Landfill and fishing and swimming in the Columbia River.

[3] The Yakama Nation is a federally-recognized Indian tribe. 1855 Treaty with the Yakama, 12 Stat. 951. The Yakama Nation enjoys reserved "in common" usufructuary rights on the land in and immediately surrounding the Roosevelt Landfill.

ORDER ~ 3

Thereafter, APHIS and HWS entered into Compliance Agreements, allowing HWS to handle and transport up to 150,000 tons of garbage from Hawaii to the Roosevelt Landfill annually. After the garbage is unloaded at a Washington or Oregon port, it will be shipped by rail and truck along the Columbia River Gorge for burial at the Roosevelt Landfill.

On July 28, 2010, Plaintiffs filed this lawsuit, seeking a temporary restraining order and preliminary injunction preventing the shipment of Hawaiian garbage to the mainland until the Court has resolved Plaintiffs' claims that Defendants violated the National Environmental Protection Act (NEPA), 42 U.S.C. §§ 4321-4370e; Section 106 of the National Historic Preservation Act (NHPA), 16 U.S.C. §§ 470 *et seq.*; the Yakama Treaty of 1855; federal Indian trust common law; the American Indian Religious Freedom Act, 42 U.S.C. §§ 1996 *et seq.*; Presidential Executive Orders 13,175, 13,007, and 12,898; and the Administrative Procedures Act, 5 U.S.C. §§ 500 *et seq*. (Ct. Recs. 1 & 56.) On July 29, 2010, after hearing from counsel, the Court entered a temporary restraining order enjoining Defendants from authorizing shipments of Hawaiian garbage into the mainland and set this preliminary injunction hearing. (Ct. Rec. 37.)

On August 11, 2010, APHIS cancelled the Compliance Agreements with HWS in order to conduct additional analysis pursuant to the NHPA. (Ct. Rec. 58: Decl. Bech ¶ 5.) HWS appealed this cancellation; on August 27, 2010, APHIS Administrator Smith denied the appeal. (Ct. Rec. 67: Decl. Bech ¶ 8.) On August 27, 2010, APHIS-PPQ Deputy Administrator Bech filed a declaration stating:

> 9.  APHIS had determined that it would be appropriate to conduct additional . . . NEPA . . . analysis regarding HWS' petition to move MSW from Hawaii to the mainland,

         U.S. to further assess the impacts associated with the movement under a compliance agreement. Such analysis will be made available for public review and comment prior to issuing any NEPA final decision document.

10.   Unless and until APHIS is satisfied that it has completed all of its obligations under the NHPA and under NEPA as per 7 C.F.R. § 330.402(b)(2), regarding HWS' petition to move MSW from Hawaii to the mainland, U.S., no new compliance agreement will be issued by APHIS.

*Id.* At the hearing, defense counsel Mr. Bair clarified that the EA and FONSI will remain in effect while APHIS conducts supplemental environmental review.

**B.   Authority and Analysis**

Defendants have not challenged the evidence submitted by Plaintiffs in support of their preliminary injunction requests; rather, Defendants contend that a preliminary injunction is inappropriate because this lawsuit is moot and no injury will be suffered given that APHIS has cancelled the Compliance Agreements, will supplement its environmental analysis, and will engage in consultation as required by the NHPA.

    1.   <u>Mootness Doctrine</u>

Defendants are correct that this Court's jurisdiction is limited to cases or controversies.[4]  U.S. Const. art. III § 2.  A case is moot if

---

[4]  The standing and mootness doctrines are both based on the Constitution's case-or-controversy requirement. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000) (citing U.S. Const. art III § 2). Standing is determined at the time the lawsuit is filed; whereas, the question of mootness arises during the pendency of the lawsuit: "'[t]he requisite personal interest that must

ORDER ~ 5

the issues are no longer live and the court is unable to grant effective relief. *EEOC v. Fed. Express Corp.*, 558 F.3d 842, 846 (9th Cir. 2009); *GTE Cal., Inc. v. FCC*, 39 F.3d 940, 945 (9th Cir. 1994). Nonetheless, "completion of activity is not the hallmark of mootness." *Neighbors of Cuddy Mountain v. Alexander*, 303 F.3d 1059, 1065 (9th Cir. 2002).

There are exceptions to the mootness doctrine. *EEOC*, 558 F.3d at 847. The relevant exception is voluntary cessation, which applies "if the defendant voluntarily stops the allegedly illegal conduct to avoid a judgment against him, unless it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Forest Guardians v. U.S. Forest Serv.*, 329 F.3d 1089, 1095 (9th Cir. 2003) (quoting *Laidlaw Envtl. Servs.*, 528 U.S. at 189). This is a "stringent" standard, and the party claiming mootness has the "'heavy burden of persuad[ing]' the court that the challenged conduct cannot reasonably be expected to start up again." *Laidlaw Envtl. Servs.*, 528 U.S. at 189 (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)). The timing of the voluntary cessation is a factor in considering the defendant's motivation for voluntarily ceasing the challenged action. *Native Vill. of Noatak v. Blatchford*, 38 F.3d 1505, 1511 (9th Cir. 1994).

---

exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *Id.* at 189 (citing quotations omitted); *see also Sierra Club v. U.S. Army Corps of Eng'rs*, 446 F.3d 808, 814 (8th Cir. 2006).

ORDER ~ 6

Following the initiation of this lawsuit, APHIS 1) cancelled the Compliance Agreements with HWS, 2) stated that it will engage in consultation consistent as required by the NHPA, and 3) represented that it will engage in supplemental environmental analysis associated with hauling Hawaiian garbage to the Roosevelt Landfill. Yet, APHIS has neither 1) withdrawn the EA or FONSI nor 2) represented that it will consult with the Yakama Nation. The FONSI marked the consummation of APHIS's decision-making process and legal consequences flow from it—it is a final action. *See Sierra Club*, 446 F.3d at 815-16. Accordingly, simply withdrawing the Compliance Agreements, communicating with agencies in compliance with the NHPA, and conducting supplemental environmental analysis does not afford Plaintiffs the entire relief they were seeking, i.e., invalidation of the EA and FONSI. Further, if the FONSI remains, APHIS has the regulatory authority to enter into a compliance agreement allowing the shipment of Hawaiian garbage to the Roosevelt Landfill *without* seeking public comment or providing notice. 7 C.F.R. § 330.403. These circumstances are clearly different than those before the district court in *Wildwest Institute v. Seesholtz*—a case relied upon by Defendants. No. CV-07-199-S-BLW, 2008 WL 3289486 (D. Idaho Aug. 8, 2008).

Accordingly, the Court finds that Defendants have failed to establish the stringent standard necessary to prevent the application of the voluntary-cessation exception to the mootness doctrine because the challenged conduct, i.e., reliance upon the allegedly-inadequate EA and FONSI and deficient interaction with the Yakama Nation, has not been withdrawn or recognized as deficient. This Court can still give

ORDER ~ 7

effective relief by 1) declaring that APHIS failed to comply with NEPA's procedural requirements and 2) requiring APHIS to consult with the Yakama Nation prior to taking final agency action. *See EEOC*, 558 F.3d at 847-48 (finding that voluntary cessation exception to the mootness doctrine applied because FedEx had not given any assurance that it would not challenge another administrative subpoena). *Cf. Forest Guardians*, 329 F.3d at 1095 (determining agency met heavy burden because agency admitted that its forest management plan was defective and it had not attempted to issue permits under the defective plan); *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123-24 (9th Cir. 1997) (finding case moot because biological opinion had been superseded by a newer biological opinion that would not expire for three years, thereby providing sufficient time to challenge new biological opinion); *Nome Eskimo Cmty. v. Babbit*, 67 F.3d 813, 815-16 (9th Cir. 1995) (determining challenge to agency's notice that it would accept bids for lease rights was moot because agency counsel represented that the agency would not attempt further mineral development for five years); *Aluminum Co. of Am. v. Bonneville Power Admin.*, 56 F.3d 1075, 1078 (9th Cir. 1995) (finding challenge to 1993 record of decision (ROD) moot because it had expired and agency action was being taken pursuant to a new ROD for which there was sufficient time to obtain judicial review); *N.W. Envtl. Def. Ctr. v. Allen*, No. 05-1279-AA, 2007 WL 1746333 (D. Or. June 13, 2007) (finding no agency action for the court to review because the biological opinion was withdrawn by the agency so that it could comply with a recent Ninth Circuit decision; however, the court imposed a notice requirement on the agency if it planned on issuing a new biological opinion). Finding that

ORDER ~ 8

effective relief can be given, the Court proceeds to the merits of Plaintiffs' motions for preliminary injunction.

2.  Preliminary Injunction

The Court highlights again that Defendants did not challenge the evidence submitted by Plaintiffs in support of their preliminary injunction request. Defendants submit, however, that neither Plaintiffs nor the public are likely to suffer harm if the preliminary injunction is not entered because the Compliance Agreements with HWS were cancelled and supplemental environmental analysis will occur.

A preliminary injunction may be issued to maintain the status quo if the plaintiffs establish that they are "likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter v. NRDC*, 129 S. Ct. 365, 374 (2008). The Ninth Circuit uses a "sliding scale" under which a preliminary injunction may be issued if there are serious questions going to the merits and the balance of hardships tips sharply in the plaintiffs' favor, along with satisfaction of the two other *Winter* factors. *Alliance for the Wild Rockies v. Cottrell*, --- F.3d ---, 2010 WL 2926463 (9th Cir. July 28, 2010).

The Court finds this standard is met. First, regardless of 1) the cancellation of the Compliance Agreements and 2) APHIS's stated intent to comply with the NHPA and conduct supplemental environmental analysis, there are serious questions relating to whether the EA sufficiently analyzed the impacts that the shipment of Hawaiian garbage will have on the affected Northwest area, including the ports, routes of train or

ORDER ~ 9

truck travel, and the Roosevelt Landfill. Other than a no-action alternative, there was no analysis of alternatives. For these reasons, the Court finds it likely that Plaintiffs will prevail on their NEPA claims that the EA and FONSI failed to adequately analyze the environmental impacts of shipment and receipt of Hawaiian garbage to the Roosevelt Landfill, which is located on lands ceded by the Yakama Nation, wherein tribal members enjoy "in common" usufructuary rights, and in close proximity to the Columbia River, in which the environment organization members and individual Plaintiffs enjoy fishing, boating, and swimming. *See Ctr. for Biological Diversity v. Nat' Highway Traffic Safety Admin.*, 538 F.3d 1172, 1220 (9th Cir. 2008). Further, there are serious questions about whether Defendants adequately consulted with the Yakama Nation as required by the Yakama Treaty of 1855 and federal Indian trust common law.

Second, Plaintiffs are likely to suffer irreparable harm in the absence of a preliminary injunction barring the shipment of Hawaiian garbage. The Roosevelt Landfill is located in the area in which tribal members exercise their "in common" hunting, gathering, and fishing rights protected by the Yakama Treaty of 1855. The introduction of an invasive species or contamination by the Hawaiian garbage would immeasurably harm the resources and waterways enjoyed by the Yakama Nation, the environmental organization members, and the two individual Plaintiffs, as well as the Yakama Nation's logging industry. The cancellation of the Compliance Agreements and stated intent to conduct supplemental environmental analysis does not lessen the likelihood of irreparable harm because the injury under NEPA occurred when APHIS issued its allegedly

deficient EA and FONSI. *See Siera Club*, 446 F.3d at 816 ("The injury-in-fact is increased risk of environmental harm stemming from the agency's allegedly uninformed decision-making."). Further, APHIS may enter into a new compliance agreement without seeking public comment or giving public notice so long as the FONSI remains effective. 7 C.F.R. § 330.403.

Third, the balance of equities tips sharply in Plaintiffs' favor. While the USDA has an interest in encouraging economic growth and Hawaii has an interest in disposing its garbage, those interests are trumped by Plaintiffs' interests in ensuring that the environmental impacts and the related economic consequences resulting from those environmental impacts are fully considered before Hawaiian garbage is shipped to the Roosevelt Landfill. The pre-2006 regulation prohibiting the shipment of Hawaiian garbage to the mainland is evidence of the historic concerns about the environmental risks inherent in such shipments. While 7 C.F.R. § 330.402 lifted that ban, APHIS's fidelity to the NEPA reprocess is critical. And APHIS acknowledges that some level of supplemental environmental analysis is necessary under the circumstances.

Fourth, a preliminary injunction is in the public interest. Although baled garbage will remain at the Honolulu port longer than anticipated, it has already sat there for over 230 days. There is nothing before the Court indicating that the presence of the garbage in Honolulu will injure the public. In comparison, the introduction of an invasive species from Hawaii to the mainland will injure those who enjoy these lands, waters, and wildlife, and those who benefit from industries, such as the timber and soft-fruit industries, which may be affected by an invasive species.

ORDER ~ 11

1    3.   Conclusion

2    Accordingly, the Court determines Plaintiffs have established that
3 a preliminary injunction is necessary.  Nonetheless, the Court will
4 lessen the scope of the previously-imposed bar to that area of the
5 mainland wherein the Plaintiffs will likely suffer injury.  In addition,
6 the parties are to meet and confer regarding scheduling and submit a
7 joint status certificate; thereafter, a scheduling conference will be
8 held.

9    For the reasons given above, **IT IS HEREBY ORDERED**:

10   1.   Friends of Columbia Gorge, Northwest Environmental Defense
11 Center, Columbia Riverkeeper, Dawn Stover, and Daniel Lichtenwald's
12 Motion to Expedite Hearing **(Ct. Rec. 72)** is **GRANTED**.

13   2.   Friends of Columbia Gorge, Northwest Environmental Defense
14 Center, Columbia Riverkeeper, Dawn Stover, and Daniel Lichtenwald's
15 Motion to Strike Supplemental Declaration of Rebecca Bech **(Ct. Rec. 69)**
16 is **DENIED.**

17   3.   The Yakama Nation's Motion for Preliminary Injunction **(Ct. Rec.
18 66)** is **GRANTED**.

19   4.   Friends of Columbia Gorge, Northwest Environmental Defense
20 Center, Columbia Riverkeeper, Dawn Stover, and Daniel Lichtenwald's
21 Motion for Temporary Restraining Order and Preliminary Injunction **(Ct.
22 Rec. 24)** is **GRANTED**.

23   5.   Defendants are enjoined from:
24        a.   authorizing shipments, subject to USDA-APHIS permitting,
25             of Hawaiian garbage to Washington or Oregon ports on the
26             Columbia River and/or to the Roosevelt Landfill,

|   |   |   |
|---|---|---|
| 1 |  | including those shipments authorized under any compliance |
| 2 |  | agreements between HWS and USDA-APHIS, and |
| 3 | b. | permitting, authorizing, allowing, or otherwise granting |
| 4 |  | permission to HWS or any other private trash hauling |
| 5 |  | enterprise to load, ship, transport, or otherwise export |
| 6 |  | Hawaiian garbage from Honolulu to Washington or Oregon |
| 7 |  | ports on the Columbia River and/or to the Roosevelt |
| 8 |  | Landfill. |

6. The $100.00 bond (Ct. Rec. 38) posted by Plaintiffs shall remain posted.

7. No later than **September 13, 2010**, the parties shall file a joint status certificate setting forth the results of their meet and confer regarding 1) the production of the administrative record, 2) the briefing and calendering of summary judgment motions, 3) trial date and length, and 4) other helpful scheduling information for the Court.

**IT IS SO ORDERED.** The District Court Executive is directed to file this Order and provide copies of this Order to counsel.

**DATED** this ___30th___ day of August 2010

                    s/Edward F. Shea
                    EDWARD F. SHEA
                United States District Judge

Q:\Civil\2010\3050.f.inal.PI.wpd

ORDER ~ 13